UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20281-CIV-HUCK
MAGISTRATE JUDGE P. A. WHITE

CHARLES R. MONROE,           :

   Plaintiff,        :

v.                           :     REPORT OF
              MAGISTRATE JUDGE
WALTER A. MCNEIL, et al.,:

   Defendants.       :

_____

## I  INTRODUCTION

In this case, plaintiff Monroe, who is no longer incarcerated, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983 (DE#1), against five defendants, relating to his medical care in the Florida Department of Corrections ("FDOC") at Dade Correctional Institution ("DCI") where he was previously confined. The named defendants were DCI Warden Harris; DCI Health Care Administrator Tate; Dr. Julio Poveda, M.D.; FDOC Secretary McNeil; and FDOC Regional Director Villacorta. After a Preliminary Report and Order of partial dismissal (DE#s 6, 13), the case remained pending against Dr. Poveda. The claims against all other defendants were dismissed.

Pursuant to the pretrial scheduling Orders (DE#s 14, 19) motions to dismiss or for summary judgment were due to be filed by February 12, 2010; and pursuant to the Order Setting Civil Non-Jury Trial (DE#25), the case is currently set for Calendar Call on Wednesday, March 24, 2010, and a Bench Trial before the Honorable Paul C. Huck, United States District Judge, on Friday, March 26, 2010. **This Cause is currently before the Court upon Dr. Julio Poveda's Motion for Summary Judgment (DE#47, filed 2/10/10)**, with supporting Exhibits A-D (filed at DE#s 47-1 to 47-4), as to which plaintiff Monroe, as a *pro se* litigant, was advised of his right to respond.(Order of Instructions, DE#48). In opposition to Poveda's summary judgment motion, plaintiff Monroe has filed a Response (DE#49), and Poveda has filed a Reply (DE#50).[1]

_____

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

In his motion, Dr. Poveda argues that he is entitled to summary judgment: because with respect to a claim that Poveda denied

---

[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted) Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir.1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir.1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir.1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), the Order of Instructions (DE#48) was entered, to inform the plaintiff Monroe, as a *pro se* litigant, of his right to oppose the defendant Poveda's motion for summary judgment pursuant to Fed.R.Civ.P. 56 (DE#47), and instructing Monroe regarding requirements under Rule 56 for a proper response to such a motion.

Monroe pain medication that had been prescribed by a neurosurgeon, Monroe's complaint is subject to dismissal under 42 U.S.C. §1997e(a), as Monroe did not fully exhaust his available administrative remedies with respect to that claim before filing suit in this Court under §1983; because the record shows that Monroe received timely and appropriate care, and Monroe fails to show that Poveda was deliberately indifferent to his serious medical needs; and because he (Poveda) is entitled to qualified immunity.

## II      DISCUSSION

With his complaint (DE#1) plaintiff Monroe filed numerous exhibits (at DE#1 pp. 15-52) which include, *inter alia*, medical records and documents pertaining to Monroe's use of the DOC's inmate grievance procedure.

In the Preliminary Report, the allegations of Monroe's complaint were summarized, as follows:

> The plaintiff alleges that Dr. Poveda has been deliberately indifferent to his serious medical needs by failing to provide proper medical treatment for his neurological problems, pain and by failing to allow him to have specialist ordered follow-up treatment. Specifically, the plaintiff alleges that upon his entry into prison in February, 2006 Dr. Poveda ordered an MRI exam to determine the extent of his unspecified injury. The plaintiff advised Dr. Poveda after he was transferred to Dade CI that he was having increased pain and numbness in his legs and back. Dr. Poveda ordered specialty examinations, which did not provide a diagnosis, and Dr. Poveda set up a consult with a neurosurgeon. The plaintiff presented to a neurosurgeon in August, 2007, who ordered Dr. Poveda to forward the results of the MRI to him and to set up a followup appointment. Dr. Poveda allegedly did not send the MRI results or schedule an appointment and, as a result, the plaintiff alleges that he has undergone severe trauma and deterioration to his lumbar and cervical spine, resulting in severe pain. He claims that despite seeking medical assistance from Dr. Poveda, the doctor has continued to delay treatment, has failed to send test results to the neurosurgeon, has failed to allow the plaintiff to continue treatments, and has discontinued medication. The plaintiff states that Dr. Poveda has not arranged for surgery which was ordered by the specialist,

and he is now experiencing paralysis and other ailments. The plaintiff further alleges that Warden Harris has acted with deliberate indifference to his serious medical needs by conspiring to cover up Dr. Poveda's mistakes by denying his grievances, and by failing to ensure that he receive extra pillows and blankets.  The plaintiff seeks monetary damages and other relief.

(Preliminary Report, DE#1, pp.5-6).

As noted above, the defendant Poveda has filed four exhibits in support of his motion for summary judgment. These are: <u>Exhibit A</u>, a copy of Monroe's 8/6/09 Deposition (at DE#47-1); <u>Exhibit B</u>, Julio Poveda, M.D.'s Affidavit (at DE#47-2); <u>Exhibit C</u>, a copy of the Contract between the FDOC and MHM Solutions, Inc. ("MHM"), under which MHM was contracted, in pertinent part, to provide medical services to inmates confined at institutions in DOC Region IV where DCI is located; and <u>Exhibit D</u>, an entry in Monroe's medical chart dated 9/18/08, stating that, based on prior MRIs and newly taken MRI results, it was the conclusion of the neurosurgeon that surgery on plaintiff's spine, which earlier had been contemplated, was not indicated because from the MRIs there was evidence of mild stenosis but no evidence of "nerve root compression," and the surgeon could not find a logical explanation or cause to explain the patient's complaints and difficulty moving his right lower extremity.

Monroe's ten page Response (DE#49), filed in opposition to Poveda's summary judgment motion, contains arguments by Monroe, and statements made and conclusions reached by him, but includes with it no affidavits, medical records, or other exhibits.

### A.   <u>The Law Relating to Medical Claims In the Prison Context</u>

### <u>Causation</u>

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. <u>Harris v. Ostrout</u>, 65 F.3d 912, 917 (11 Cir. 1995); <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988, 999 (11 Cir. 1995).

4

### Medical Indifference

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. See Estelle, supra, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

In Estelle, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id., 429 U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. McElligot v. Foley, 182 F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[2] and a mere difference of opinion between an inmate and prison medical

---

[2]     It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[3] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable

---

[3]     The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle v. Gamble, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim); Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991) ("mere medical malpractice does not constitute deliberate indifference"... "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment"). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. Taylor v. Adams, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

### The Eighth Amendment

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) *an objective element*, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) *a subjective element*, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"'... constitutes cruel and unusual punishment forbidden by the Eighth

Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, supra, 169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer v. Brennan, the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, supra, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8ᵗʰ Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-Farmer, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell supra, at 1364 (citing Farmer, at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did

not...'") (quoting <u>Farmer</u>, <u>supra</u>, 511 U.S. at 834, 838).  Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." <u>Campbell</u>, <u>supra</u>, at 1364 (citing Farmer, at 837).

## B.  ANALYSIS

From the pleading, it appears that the gravamen of Monroe's complaint against Dr. Poveda was essentially four-fold. First, Poveda is alleged, generally, to have failed to provide proper treatment for Monroe's neurological problems and pain, and failed to provide or allow follow-up care by specialists. Specifically, in conjunction with this first claim, it is alleged that initially [during 2006 and 2007] Poveda ordered examinations "which had no relation to Claimant's ailments," and then after he was sent to specialists and was seen in August 2007 by a neurosurgeon, Poveda allegedly failed to forward MRI results to the Neurosurgeon, thereby causing delay of treatment. Second, Poveda allegedly failed to ensure that Monroe was returned to the neurosurgeon for follow-up examination and surgery. Third, Poveda allegedly proscribed blood pressure medicine to Monroe for over a year, and then discontinued it, which Monroe believes is either proof that Poveda mis-diagnosed him in the first place, and unnecessarily prescribed the blood pressure medication, or alternatively is proof that Poveda was ignoring his medical needs by discontinuing the blood pressure medication. Fourth, Monroe has specifically alleged in his complaint that Poveda failed to provide him pain medication ("Poveda further failed to refill Claimant's prescription for pain medication as ordered by the neurosurgeon on the 1/18/08 visit").

In his Affidavit, the defendant Poveda states that he is a physician employed by MHM Solutions Inc., as Chief Health Officer at DCI. Poveda indicates that he has reviewed the plaintiff Monroe's DCI medical records. He states that the records "establish timely and complete medical care," and states that he also has independent recollection of the care he rendered to Plaintiff Monroe during his incarceration at DCI. Poveda states that Monroe

was transferred to DCI in February 2006. He examined Monroe for
complaints of back pain, and weakness in his legs, and immediately
ordered MRI films and x-rays of the lumbar and cervical spine.
Poveda states that Monroe had complaints of pain and weakness due
to a pre-existing back injury, and that he referred him to the
Department of Corrections Impaired Program Assistance ("DCIPA"),
which ensures that inmates have help with activities of daily
living ("ADLs") and assistive devices for ambulating; and Monroe
participated in the program and was provided all benefits required,
including an Orderly to help him with his ADLs, and a wheelchair.

    Poveda states that during his first consultation with Monroe
in February 2006, he developed a care plan that was implemented to
treat his complaints of pain in his back and lower extremities.
Poveda states that the care plan "included medications for pain
relief including Ibuprofen, Tylenol 3, and Toradol and Elavil
(which is prescribed for neuropathic pain)." Poveda further states
that "Plaintiff was always provided with these medications and pain
relief was never denied." The care plan included provision of the
wheelchair that was provided through the DCIPA. The plan of care
also included special privileges to reduce further aggravation of
the Plaintiff's condition, including passes for a 24-hour orderly,
a lower bunk, no shaving, slow eating, pants with an elastic band,
an egg crate mattress, a wheelchair cushion, and work boots. Poveda
states that the plan also included consultations with a neurolo-
gist, a neurosurgeon, orthopedist, and physical therapy, and he
states that all consults were timely ordered. Poveda states that
Monroe "indeed attended physical therapy." Poveda states that based
on the recommendation of Neurosurgeon Dr. Cesar Guerrero, the care
plan included lumbar spine surgery. Poveda states that MRI films of
Monroe's cervical spine were again ordered by Dr. Guerrero and
performed in June 2007; that cervical spine MRIs were again ordered
by Dr. Guerrero and performed in January of 2008; and that Monroe
was again evaluated by Dr. Guerrero in September 2008. Poveda
states that on September 18, 2008, Dr. Guerrero cancelled the
surgery after he concluded from his examination of the Plaintiff
and extensive testing, that there was no physiological reason to

explain the plaintiff's complaints of pain when moving his lower extremities and surgery was not indicated at that time. Poveda explains in his affidavit that Dr. Guerrero "found no nerve root compression nor spinal cord compression causing pain nor requiring surgery." Poveda also states that he promptly attended to Monroe when he saw him at the DCI clinic; timely and frequently ordered consultations with specialists for plaintiff's complaints of back pain and leg pain and leg weakness. He states that in August 2008, before Monroe's release from incarceration, he again ordered consults for the plaintiff with an orthopedist, a neurologist and physical therapy. Finally, Poveda states in his affidavit that Monroe was evaluated and treated by neurological specialists for his complaints of back pain and difficulties moving his lower extremities, and that no physical etiology [cause] was ever determined for the complaints of pain; and he states that "plaintiff's complaints of pain were never ignored and always attended to." Poveda concludes his affidavit, stating: "at not time did I refuse to give the Plaintiff treatment, nor did I willfully deprive the Plaintiff of care and treatment." (DE#47-2).

### Claims Regarding Course of Treatment, and Delay

With respect to the plaintiff's first two claims (i.e., that generally he was not provided proper treatment for his neurological problems, and specifically that the initial course of treatment before referral to the Neurosurgeon in 2007 was misdirected; that Poveda failed to obtain and send MRI results to the Neurosurgeon when he was asked to do so, and that Poveda failed to ensure that Monroe was sent to the Neurosurgeon for follow-up evaluation and surgery), the record does not reflect deliberate indifference on the part of Dr. Poveda. It is not clear from the record at what precise point in time Poveda's [and the Neurosurgeon's] plan of care for Monroe included lumbar spine surgery. It is clear however, that the recommendation/plan to perform surgery, which ultimately was cancelled, was not arrived at when Poveda first saw Monroe in February 2006. Rather, that recommendation came later after consultations with specialists including the Neurosurgeon Dr. Guerrero. Even if it were true that Poveda initially conducted

tests or exams that in Monroe's opinion were not appropriate or did not address or resolve Monroe's complaints to Monroe's satisfaction, and even if, assuming *arguendo*, Poveda between his first evaluation of Monroe in February 2006 and Monroe's August 2007 Neurosurgical consult followed a conservative course of treatment, those things do not, in and of themselves, rise to the level of a constitutional tort based on deliberate indifference to serious medical needs.  Short of surgery, it is undisputed that many things (detailed in Poveda's Affidavit, as stated above) were included in Poveda's plan of care for Monroe's condition. (See Poveda Affidavit; See also statements by Monroe, at deposition [DE#47-1, Deposition at T/61-64], indicating that he received various special passes, was assigned an orderly, was provided an egg crate mattress, a special back support, a wheelchair and seat cushion, and boots to give him ankle stability).

As noted supra, at footnote 3 of this Report, and related text, a difference of opinion between an inmate/patient and institutional medical staff, alone, does not amount to deliberate to the inmate/patient's serious medical needs. Estelle v. Gamble, supra, 429 U.S. at 107; Harris v. Thigpen, supra, 941 F.2d at 1505.

The fact that plaintiff Monroe was treated with a more conservative course of treatment than he would have liked, especially prior to the time that the surgeon initially stated that surgery should be considered as part of Monroe's course of treatment, amounts to a difference of opinion, and does not itself support a claim of deliberate indifference. Chappell v. Bayer, No. 97-17040, 1999 WL 62741, at *1 (9 Cir., Jan.22, 1999)(holding, "although Chappell disagrees with Dr. Spector's conservative course of treatment, a difference in opinion is insufficient to support a claim of deliberate indifference"); Alexander v. Federal Bureau of Prisons, et al., 227 F.Supp. 657 (E.D.Kentucky 2002) (citing Espinal v. Coughlin, 1999 WL 387435 (S.D.N.Y. 1999)(in which summary judgment was granted to prison doctors on grounds that an Eighth Amendment claim was not presented, in facts showing a mere disagreement with a course of treatment, a 3 year delay from the

12

prisoner's complaints about his knee until constructive surgery was performed, and a conservative course of treatment during that time)); Stevenson v. MDOC,et al., No.1:07cv213, 2009 WL 4260596, at *6 (W.D.Mich., Nov. 24, 2009)(stating, "[w]hile plaintiff now disagrees with Dr. Sneeberger's conservative course of treatment that commenced on April 15, 2004, this disagreement does not rise to the level of an Eighth Amendment claim").

Even delay of surgery, without more, does not rise to the level of a constitutional violation. Freeman v. Lebedovych, No.05-15255, 186 Fed.Appx. 943, 944, 2006 WL 1813900, at *2 (11 Cir., June 30, 2006) (citing Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9 Cir. 1985)("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference")). In this case, it appears from documents of record that the alleged failure by defendant Dr. Poveda to provide the Neurosurgeon Guerrero with MRI results, which plaintiff Monroe claims resulted in delay of care, was due to a failure by staff at an MRI Center to complete one portion of the MRI testing, and that failure of Dr. Poveda to recognize this before Monroe's next Neurosurgery consultation was near at hand, was mere inadvertence or negligence, which is not grounds for liability on a §1983 Eighth Amendment claim. Estelle, supra. Documents submitted by the plaintiff shed light on this matter. A Report by Dr. Guerrero dated 8/10/07, following his examination of inmate Monroe, stated, in pertinent part: "Need to see results of MRI of Cervical Thoracic and Lumbar spine..." return f/u in 4 weeks." (DE#1, p.16). Monroe, on 1/21/08, filed a grievance [No. 0801-463-134] complaining that MRI results had not been timely provided to the Neurosurgeon (DE#1, p.30), and on 2/8/08, Monroe received a Response signed by Dr. Poveda (DE#1, p.31) explaining what happened. The response stated: "You were scheduled to have MRI done before your appointment with the Neurosurgeon. In fact you went to Homestead diagnostic to have MRI performed on 11/19/07. However the L3-spine [lumbar spine] was not completed with that visit. Your neurosurgeon appointment approached before you can be sent back for the completion of your MRI. Dr. Poveda did not want to delay your

appointment with the Neurosurgeon. Dr. Guerra ordered the MRI at
the time of visit." (Id., p.31). Dr. Guerrero's 1/18/08
Consultation Report includes, under the heading "Recommendations,"
notations stating: "to have @ Larkin MRI of Cervical, Thoracic &
Lumbar spine" and "to be reevaluated after MRI of Cervical --
Thoracic and Lumbar Spine are done." (DE#1, p.25). The record
further indicates that on 1/18/08, at Larkin Hospital, new MRIs
were taken of the Lumbar spine (DE#1, p.26), Cervical spine (Id.,
p.27) and Thoracic spine (Id., p.28). There is no evidence that any
delay resulting from failure to recognize that a Cervical MRI had
not been done when plaintiff was sent to the a Homestead MRI
testing center, was the result of deliberate indifference based on
a requisite culpable state of mind on the part of the defendant Dr.
Poveda. See Cottrell, supra, 85 F.3d at 1491; Farmer, supra, 511
U.S. at 834, 838).

The defendant Dr. Poveda's affidavit indicates that after
Monroe's arrival at DCI in February 2006 he immediately ordered MRI
and X-ray studies of Monroe's lumbar and cervical spine; that after
plaintiff was seen by Dr. Guerrero the plan of care included lumbar
spine surgery. Poveda states that Repeat MRIs were taken of the
Monroe's spine in June 2007; MRI films were again ordered by Dr.
Guerrero and done in January 2008; and upon further evaluation of
Monroe's condition Guerrero on September 18, 2008 determined that
the surgery he had scheduled would be cancelled. This was based on
Guerrero's review of Monroe's 1/18/08 MRIs and his newest MRIs
taken 9/17/08, which showed no apparent compression on nerves that
could be identified as a cause of Monroe's pain which could be ad-
dressed by surgery. (See Poveda Affidavit DE#47-2; See Neurosurgery
chart notation by Dr. Guerrero dated 9/18/08 at DE#47-4).

In sum, in regard to the alleged taking of what plaintiff
Monroe believes was too conservative a course of treatment by Dr.
Poveda prior to a decision to include surgery in Monroe's care
plan, and in regard to Monroe's claim that there was delay in
obtaining and providing his MRI test results to the surgeon,
thereby affecting the schedule to provide surgery [which ultimately

was determined unnecessary], the record is devoid of evidence showing deliberate indifference on the part of Dr. Poveda.

### Claims Relating to Medications

There are also two claims raised by Monroe [identified as his third and fourth claims against Dr. Poveda] regarding alleged failure to provide medication. One concerns blood pressure medication which was given, and then discontinued. The other concerns alleged refusal by Dr. Poveda to provide Monroe pain medication ordered by the Neurosurgeon Guerrero.

The claim regarding blood pressure medication is not specifically addressed by defendant Poveda in his motion. From the review of the complaint (DE#1, pp.9-10, it appears that plaintiff's version of the facts is as follows. Poveda told Monroe he had high blood pressure, for which he was going prescribe medication. Monroe stated his opinion to Poveda that the condition was due to stress he lived with resulting from his spinal injury. After prescribing the blood pressure medicine for more than a year, Poveda discontinued it without giving Monroe notice or telling him why. Monroe, engaging in circular reasoning, states his opinion that this means Poveda must be culpable on one of two theories. Either Poveda by discontinuing the medication "is in default and acting deliberately indifferent to Claimant's serious medical needs" by failing to provide medications for blood pressure disease; or Poveda mis-diagnosed Monroe when he first put him on the blood pressure medication [and gave medication which was unneeded]. (See Complaint, at pp.9-10). At deposition, Monroe also addressed the claim (DE#47-1, Depo., T/53-55, 58). On this claim, plaintiff Monroe cannot prevail. While Monroe in his complaint stated his belief that discontinuing medication "causes additional damage to the patient having seizures or worse," he prefaced that comment [referring to himself in the third person] with the words "Although he experiences no residual effects..." (DE#1, p.10). At deposition, Monroe was asked: "Okay. And with regard to your second allegation about the high blood pressure issue, you indicated that you suffered no effects from being given — or being taken off the high

blood pressure medication; is that accurate"? (DE#47-1 at p.16, Depo. at T/58), and Monroe testified in response: "That's correct." (Id.). Monroe has stated in his complaint, and at deposition, that neither providing him the medication, nor discontinuing it, caused him any adverse effects. This claim, in the absence of any indication apart from Monroe's own opinion that prescribing and/or discontinuing the medication was wrong, amounts to nothing more than a non-cognizable claim founded on a difference of opinion between former inmate/plaintiff and prison medical staff, see Estelle, Ramos, Smart, and Burns, at footnote 3, supra.

The other claim, of Poveda's alleged failure to provide Monroe with pain medication prescribed by the Neurosurgeon Guerrero, is addressed by Poveda in his motion for summary judgment, but it is not addressed on the merits. Rather, Poveda argues that with regard to that portion of the complaint in which Monroe alleges the refusal/failure to provide prescribed pain medication, the case must be dismissed pursuant to 42 U.S.C. §1997e(a), which embodies the mandatory pre-suit administrative exhaustion provision of the Prison Litigation Reform Act of 1995 (the "PLRA").

The plaintiff in his Response (DE#49) states that with regard to this issue he did exhaust his available administrative remedies.

As enacted on April 26, 1996, the PLRA significantly altered a prisoner's right to bring civil actions in forma pauperis, and in pertinent part places new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement. Title 42 U.S.C. §1997e, entitled Suits by Prisoners, provides, in pertinent part, as follows:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted.

In general, the rules for Florida inmate grievances, as published in the Florida Administrative Code, provide first for an inmate to file an Informal Grievance, see F.A.C. §33-103.005(1), and thereafter, if dissatisfied with the response, to file a formal grievance at the institution, see: F.A.C. §33-103.006, et seq. Thereafter, in the event that the inmate feels the grievance was not satisfactorily resolved during the formal grievance procedure, he may file a Request for Administrative Remedy or Appeal to the Office of the Secretary, see F.A.C. §33-103.007, et seq. See Chandler v. Crosby, 379 F.3d 1278, 1288 (11 Cir. 2004).

Under certain circumstances, the inmate may bypass the filing of an informal grievance, and proceed directly to the filing of a formal grievance. (This includes instances of emergency, reprisal, grievances of a sensitive nature, or regarding medical concerns). Thereafter, if the formal grievance at the institutional level is properly filed, and denied, the inmate must file an Appeal at the DOC Central Office in Tallahassee.

The Courts have made clear that §1997e(a), as amended, now requires a prisoner to have exhausted those administrative processes which are available to him prior to bringing suit on a claim in federal court. Alexander v. Hawk, 159 F.3d 1321 (11 Cir. 1998); Booth v. Churner, 532 U.S. 731, 736-41 (2001) (holding that "one 'exhausts' processes, not forms of relief..."); Miller v. Tanner, 196 F.3d 1190, 1193 (11 Cir. 1999) (incarcerated state prisoner must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under §1983; Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir. 1999) (where a grievance was not timely filed, an appellant must have sought leave to file an out-of-time grievance, and if he has not done so before bringing suit, then his administrative remedies will be considered unexhausted, since to find otherwise would allow inmates to simply ignore the PLRA's exhaustion requirement and still gain access to federal court).

Thus, the Courts have held that satisfaction of the PLRA exhaustion requirement serves as a threshold issue, since the statutory mandate requires that an inmate/prisoner must have fully exhausted the administrative remedies/processes which are available to him or her, <u>before</u> bringing suit on a claim in federal court, regardless of the form of relief that the administrative process makes available. <u>See</u> <u>Booth</u>, <u>supra</u> 532 U.S. at 736-41; <u>Higginbottom v. Carter</u>, 223 F.3d 1259 (11 Cir. 2000); <u>Miller</u>, <u>supra</u>, 196 F.3d at 1193; <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11 Cir. 1999); <u>Harper</u>, <u>supra</u>, 179 F.3d at 1312; <u>Alexander</u>, <u>supra</u>, 159 F.3d at 1325-26.

In this case, the defendant Poveda specifically argues in his motion for summary judgment that the Court is barred under §1997e(a) from reaching the merits of the claim about denied pain medication because he (Poveda) claims that plaintiff Monroe never filed an administrative appeal through the DOC inmate grievance procedure regarding that claim. Poveda bases this argument on a response to a question posed by counsel to Monroe at his 8/6/09 deposition. In a compound question referencing both the blood pressure medication issue and pain medication issue, Monroe was asked if he filed grievances, and he responded, "I did." (DE#47 p.16, Depo. at T/60). Monroe was then asked "Did you appeal those issues to the Secretary of State [sic]?"[4]... and Monroe responded, "No I did not." (<u>Id</u>). In his Summary Judgment Motion (DE#47, p.15) Poveda cites Monroe's response given at page 60 of his deposition. Poveda argues that Monroe filed only one appeal (an appeal of a formal grievance marked Number 0801-463-134) and asserts that that appeal was concerned with the need for an MRI. That grievance number is discussed in the Monroe deposition (<u>see</u> DE#47 p.16, Depo. at T/59-60). Defendant Poveda has not appended a copy of grievance 0801-463-134 as an exhibit to his summary judgment motion, nor a copy of the administrative appeal which he argues dealt only with need for an MRI. Careful examination of the record in this case,

---

[4]     Counsel at deposition apparently meant to say "Secretary of the Florida Department of Corrections," rather than "Secretary of State."

however, reveals that copies of the grievance and appeal, and responses to them, are of record, as they are appended to Monroe's complaint. <u>See</u> Grievance marked No. 0801-463-134 dated 1/21/08 (DE#1, pp.30, 41); the Grievance Response by Dr. Poveda dated 2/8/08, also signed by Warden Harris (DE#1, p.31); Monroe's Appeal thereof dated 2/21/08 marked appeal No. 08-6-05962 (DE#1, p.36); and the Appeal Response from Tallahassee dated 4/17/08 and marked No. 08-6-05962 specifically referencing "the response made to you by Dr. Poveda on 2/8/08" (DE#1, p.35). Moreover, examination of those documents reveals that notwithstanding Monroe's Answer at Deposition, stating that he did not file an appeal about not getting medication prescribed by the neurosurgeon, the record shows that Monroe in fact did file such an appeal. While the majority of the appeal (DE#1 p.36) addressed need for MRI results, and delay, the last two sentences of the 2/21/08 appeal read, as follows, verbatim: "Moreover, as of this date I have not received the Ibuprofen pain regemin [sic] prescribed by the neurosurgeon on 1/18/08. The medical department at Dade C.I. has failed to provide me with adequate treatment and clearly is showing reckless intent." (<u>Id.</u> p.36). Examination of the 1/21/08 grievance, from which the 2/21/08 appeal was taken, reveals that although Monroe did not specifically state therein that he was denied the prescribed pain medication, he did complain that "the medical department of Dade C.I. has and is continuing to negligently and deliberately be indifferent to my serious medical needs that is causing me extreme pain, and discomfort, unable to walk, and mental stress that could result in permanent paralysis...". (DE#1, pp. 30, 41). The appeal was not rejected for including an issue which was more specifically framed in the appeal than in the grievance being appealed.

Accordingly, it appears that for purposes of the PLRA, the plaintiff's administrative filings were sufficient to put the DOC on notice of his claim regarding failure to alleviate his pain, and specifically a sub-claim that he was being denied pain medication which was ordered for him by the Neurosurgical specialist to whom he was sent for examination and treatment from DCI.

In the absence of a substantive response by defendant Poveda in his Summary Judgment regarding the claim of denied pain medication, there are genuine issues of material fact, the existence of which precludes summary disposition of the claim. See Celotex, supra. While Dr. Poveda in his Affidavit (DE#47-2, p.3) states, generally, that his care plan included the provision of medications for pain relief, including Ibuprofen, Tylenol #3, and Toradol and Elavil (for neuropathic pain), and states that plaintiff "was always provided with these medications and pain relief was never denied" (Id., Affidavit, ¶7), there is no detailed information regarding the distribution of such medication to plaintiff Monroe. There are no medication charts, doctors' orders, or progress notes pertaining to the prescription and administration of pain medication to Monroe by Dr. Poveda and his staff, either before or after the alleged pain medication Orders by the Neurosurgeon in January 2008.

The plaintiff has alleged and sworn under penalty of perjury in his complaint that his condition causes him extreme pain, and the record substantiates that he has a condition sufficiently severe that he either cannot walk or has difficulty walking, for which he was issued a wheelchair, an inmate Orderly to assist him with ADLs, and received numerous other accommodations. In his sworn complaint Monroe also has stated that after arriving at DCI he advised Dr. Poveda of "intensifying pain throughout his legs and back." (DE#1, p.3). Monroe has alleged under oath that on numerous occasions his pain was so intense that emergency intervention had to be taken, by bringing him to the infirmary for overnight observation, and provision of Intravenous sedatives. He has stated that even that only lessened his pain, but did not cause the pain to subside. (Id., p.4). Plaintiff has stated in his sworn complaint that "Poveda further failed to refill plaintiff's prescription for pain medication as ordered by the neurosurgeon on the 1/18/08 visit." (Id., p.6).

It appears that, pain itself, experienced over a long period, would, apart from Monroe's underlying disease process, qualify as a serious medical need. See McElligott v. Foley, 182 F.3d 1248,

1257 (11 Cir.1999) (finding that an inmate's complaints of
abdominal pain over a course of 5½ months should have signaled a
serious medical need); see Farrow, supra, 320 F.3d at 1247 (inmate
complained about dental pain for about 15 months); Brown v. Hughes,
supra, 894 F.2d at 1538 (painful broken foot can be serious medical
need, and an official's deliberate delay on the order of hours in
providing care for a serious and painful broken foot is sufficient
to state a constitutional claim); Aldridge v. Montgomery, 753 F.2d
970, 972-73 (11 Cir. 1985) (2½ hour delay in treatment for a
bleeding cut under the eye held actionable); Hughes v. Noble, 295
F.2d 495 (5 Cir. 1961) (13 hour delay for broken and dislocated
cervical vertebrae).

     As noted supra, the defendant Poveda did not address the claim
of denied pain medication on the merits. Poveda did include a
statement in his Affidavit that goes generally to the issue, but he
has argued in his motion only that the claim is barred from review
under §1997e(a). It true that plaintiff Monroe did not file any
affidavit with his "Response" in opposition to the defendant's
motion for summary judgment with regard to the issue of pain
medication. However, where the facts in his pleading, declared
under penalty of perjury to be true [indicating unremitting pain,
and alleged denial by Dr. Poveda of pain medication that a neuro-
surgeon had ordered that Monroe receive] appear to be irreconcil-
able with Dr. Poveda's statement in his Affidavit [indicating,
without other supporting evidence, that several types of pain medi-
cation were given to Monroe, and that he "always had" pain medica-
tion, "pain relief was never denied"], the existence of those fact
allegations in Monroe's pleading itself is sufficient to create a
genuine issue of material fact, and foreclose the grant of summary
judgment on the issue of denial of pain medication by Poveda. See
Perry v. Thompson, 786 F.2d 1093, 1095 (11 Cir. 1986) (holding that
facts alleged by the plaintiff in a sworn pleading are sufficient
to defeat a motion for summary judgment, and it is improper to
grant summary judgment on the basis of credibility choices);
Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n.5 (11 Cir.1992)
(holding that the "facts alleged in an inmate's sworn pleading are

sufficient" to defeat as motion for summary judgment and "a separate affidavit is not necessary," so long as the allegations are not conclusory in nature). _Cf_. 28 U.S.C. §1746, which provides an alternative to making a sworn statement, by allowing the individual to say that his/her statement is true under penalty of perjury.

Summary judgment is not a procedure for resolving a swearing contest. Chandler v. Baird, 926 F.2d 1057 (11 Cir. 1991). In this case, resolution of the issue and facts that are in dispute, based upon the parties' opposing statements, would require the Court at this juncture to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in Anderson v. Liberty Lobby, Inc., supra, "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." Anderson, supra, 477 U.S. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

In sum, it appears that the claim that Monroe was denied pain medication is not barred under §1997e(a), and there exist genuine issues of material fact which, based on the record that is before the court, preclude disposition of the claim at summary judgment.

### III      Conclusion

The claim regarding denied pain medication should be allowed to proceed. As discussed, at length above, however, with respect to all other claims, the evidence, even when construed in the light most favorable to the non-movant plaintiff, does not support a conclusion that the defendant Poveda was deliberately indifferent to plaintiff's serious medical needs, and as to those claims it is apparent that the defendant Poveda is entitled to qualified

immunity, and summary judgment in his favor.[5]

It is therefore recommended that: 1) the defendant Dr. Poveda's motion for summary judgment (DE#47) be granted, in part, as to all claims, with exception of the claim that the plaintiff Monroe was denied pain medication; and 2) the case remain pending against Poveda on the sole claim that he denied pain medication to plaintiff Monroe which Monroe's Neurosurgeon had ordered in January 2008 that he should receive.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: March 3rd, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5]     The defendant has invoked the affirmative defense of qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When faced with a question of qualified immunity, the Courts pursuant to Saucier v. Katz, 533 U.S. 194, 199-200 (2001) overruled in part by Pearson v. Callahan, 129 S.Ct. 808 (2009), have until recently engaged in a two-step analysis: first asking [taking the facts in the light most favorable to the plaintiff/non-movant] whether the official's alleged conduct violated the plaintiff's constitutional rights, and then proceeding, if necessary, to a second question, whether the right was clearly established at the time of the conduct. (Note: Following the Supreme Court's opinion in Pearson v. Callahan, 129 S.Ct. 808 (2009), the Saucier two-step analysis is no longer an inflexible progression. Post-Pearson, the courts are now free to answer the second step first).  If a court, addressing the questions in the order set out in Saucier, first determines that no constitutional violation occurred, the inquiry ends there. If, however, the alleged conduct amounts to a constitutional violation, the Court then must ask whether the right was clearly established at the time of the conduct.

        Here, when construing the facts in the light most favorable to the plaintiff/non-movant Monroe, but where there is no evidence of deliberate indifference on the part of the defendant Poveda, and it is concluded that there was no constitutional violation, the inquiry ends there, and there is no necessity to reach the second question.

        In sum, except for the claim pertaining to pain medication which should be allowed to proceed for reasons discussed, above, defendant Poveda is entitled to summary judgment, because there is no showing by the plaintiff that he was deliberately indifferent [and therefore there was no constitutional violation]; and because the defendant Poveda is entitled to qualified immunity.

cc:  Charles R. Monroe, _Pro Se_
      16133 N.E. 8th Ave.
      North Miami Beach, Fl 33162

      Carmen Y. Cartaya, Esquire
      John C. Webber, Esquire
      MCINTOSH, SAWRAN, PELTZ & CARTAYA, P.A.
      1776 East Sunrise Boulevard
      P.O. Box 7990
      Ft. Lauderdale, FL 33338-7990

      The Honorable Paul C. Huck,
         United States District Judge